IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RONETTE L.,[1]

    Plaintiff,

    v.                                      Civil Case No. 3:21-cv-124

FRANK BISIGNANO,[2]
*Commissioner of the*
*Social Security Administration,*

    Defendant.

## FINAL MEMORANDUM ORDER

In this action, Plaintiff Ronette L. ("Plaintiff") seeks review of the Commissioner of the Social Security Administration's ("Commissioner") decision to deny her application for benefits. This matter comes before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (the "Objections"). (ECF No. 38.) On February 9, 2026, Magistrate Judge Summer L. Speight entered the Report and Recommendation (the "R&R").

Plaintiff raises three Objections to the reasoning of the Administrative Law Judge ("ALJ"), and by extension the Magistrate Judge's decision that adopted the ALJ findings. Plaintiff objects that (1) the Magistrate Judge incorrectly concluded that the ALJ provided her with a full and fair hearing; (2) the Magistrate Judge incorrectly concluded that the ALJ's Residual Functional Capacity determinations were supported by substantial evidence; and,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States recommends that, due to significant privacy concerns in social security cases, federal courts refer to a claimant only by his or her first name and last initial.

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this Action.

(3) remand to a different ALJ is warranted to avoid issues of bias. (ECF No. 38, at 2–12.)

The Magistrate Judge recommended that the Court deny Plaintiff's Motion for Summary Judgment, (ECF No. 35), and affirm the decision of the ALJ. (ECF No. 37, at 24.) After conducting a *de novo* review of the administrative record and considering in detail Plaintiff's Objections and Motion for Summary Judgment, the Court finds the R&R well-reasoned and supported by the record and applicable law. For the reasons articulated below, the Court concludes that Plaintiff's Objections lack merit and therefore DENIES Plaintiff's Motion for Summary Judgment, (ECF No. 35), GRANTS Defendant's Motion for Summary Judgment, (ECF No. 36), and ADOPTS the Report and Recommendation of the Magistrate Judge, (ECF No. 37), as the opinion of the Court.

## I.  Procedural Background

On March 4, 2021, Plaintiff filed a Complaint in this Court challenging the ALJ's benefits determination. (ECF No. 5.) On July 8, 2021, the parties jointly moved to remand Plaintiff's case to the ALJ because the ALJ failed to maintain a proper audio recording of the proceedings concerning Plaintiff's benefits application. (ECF No. 19, at 1.) On July 12, 2021, the Court granted the parties' consent motion to remand the case. (ECF No. 20.) The remanded hearing took place on April 24, 2023. (Administrative Record ("AR"), at 1598–1658.) On May 26, 2023, the ALJ issued a written decision denying her application for benefits. (AR, at 1577–89.)

On May 30, 2025, Plaintiff filed her Motion for Summary Judgment. (ECF No. 35.) On July 1, 2025, the Commissioner filed his Motion for Summary Judgment. (ECF No. 36.) On February 9, 2026, Magistrate Judge Speight issued her R&R recommending denial of Plaintiff's motion. (ECF No. 37.) On February 19, 2026, Plaintiff filed her Objection. (ECF No. 38.) On

2

March 2, 2026, the Commissioner filed Defendant's Response to Plaintiff's Objections. (ECF No. 39.) On March 3, 2026, Plaintiff replied to the Commissioner's Response. (ECF No. 40.)

## II. Standard of Review

### A.    Appellate Standard of Review

A district court reviews *de novo* any part of a Magistrate Judge's disposition that a party has properly objected to. Fed. R. Civ. P. 72(b)(3); *Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). Notably, as long as the "grounds for objection are clear, district court judges must consider them *de novo*, or else run afoul of both [28 U.S.C.] § 636(b)(1) and Article III." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023). The court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting a *de novo* review, a court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. The reviewing court must determine whether the factual findings are supported by substantial evidence and whether the proper legal standard was applied in evaluating the evidence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence requires "more than a mere scintilla of evidence but may be somewhat less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quotation omitted). In reviewing for substantial evidence, a court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Id.*

### B.    Determination of Eligibility for Benefits

The determination of eligibility for social security benefits involves a five-step

3

inquiry. *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015); *see* 20 C.F.R.
§§ 416.920(a)(4), 404.1520. In step one, the "ALJ asks . . . whether the claimant has been
working; at step two, whether the claimant's medical impairments meet the regulations' severity
and duration requirements; [and,] at step three, whether the medical impairments meet or equal
an impairment listed in the regulations." *Mascio*, 780 F.3d at 634. "Satisfying step 3 warrants
an automatic finding of disability, and relieves the decision maker from proceeding to steps 4
and 5." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20
C.F.R. § 404.1520(a)(1) ).

"If the claimant satisfies steps 1 and 2, but not step 3, then the decision maker must
determine the claimant's residual functional capacity, that is, an evaluation of [his or] her ability
to perform work despite [his or] her limitations ('RFC assessment')." *Id.* (citing 20 C.F.R.
§ 404.1520(e)). "The [Social Security] Administration has specified the manner in which an
ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir.
2019), *as amended* (Feb. 22, 2019). A claimant's RFC assessment considers his or her capacity
to perform sustained physical and mental activities on a regular and continuous basis, in spite of
his or her limitations. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2,
1996) (policy interpretation for assessing RFC). To formulate the RFC, "[t]he ALJ must
consider all of the claimant's physical and mental impairments, severe and otherwise, and
determine, on a function-by-function basis, how they affect the claimant's ability to
work." *Thomas*, 916 F.3d at 311 (internal quotation marks and alterations omitted).
"The RFC assessment must include a narrative discussion describing how the evidence supports
each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical
evidence (e.g., daily activities, observations)." SSR 96-8p. "Thus, a proper RFC analysis has

4

three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.

After conducting the RFC assessment, the ALJ proceeds to step four and considers whether the claimant could continue performing the work that he or she did in the past; if not, the ALJ moves on to step five. *Patterson*, 846 F.3d at 659; *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (noting step four considers "past relevant work"). "At step five, the ALJ determines whether the claimant—given [his or] her RFC, [his or] her age, [his or] her education, and [his or] her prior work experience—can do any other work that 'exists in significant numbers in the national economy.'" *Thomas*, 916 F.3d at 310 (quoting 20 C.F.R. § 416.960(c)(2)).

If, at any step of the analysis, the ALJ determines that the claimant is not disabled, the inquiry must stop and the ALJ must deny the claim. 20 C.F.R. § 404.1520(a)(4). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas*, 916 F.3d at 310.

### III. Analysis

**A.    The Court Overrules Plaintiff's First Objection Because the Magistrate Judge Properly Concluded that the ALJ Provided Plaintiff with a Full and Fair Hearing**

**1.    The ALJ Properly Provided Plaintiff's Counsel with an Opportunity to Cross-Examine the Vocational Expert**

Plaintiff first objects that the Magistrate Judge incorrectly concluded that the ALJ provided her with an opportunity for a full and fair hearing. (ECF No. 38, at 2–7.) The Court OVERRULES Plaintiff's first Objection.

During the hearing, a Vocational Expert ("VE") testified that Plaintiff was capable of performing several jobs that exist in the national economy. (AR, at 1643–44.) As the Magistrate Judge noted, Plaintiffs' counsel cross-examined the VE for approximately twenty minutes. (ECF

No. 37, at 12.) Plaintiff's counsel questioned the VE regarding the extent to which individuals performing these jobs are required to stand, lift objects, or otherwise exert themselves. (AR, at 1646–57.) Toward the end of that questioning, the following colloquy occurred:

> ATTY: *And I think you may have gone through this* . . . but, you know, that lifting requirement, obviously, the employee is standing . . . while they're lifting, is that—
>
> ALJ: —Counsel, *we're not going back on that right now.* Please just wrap up any question that you have not asked already so that we can give the next Claimant their—
>
> ATTY: Okay.
>
> ALJ: —proper amount of time to have their hearing.
>
> ATTY: All right. Your Honor, I don't have any further questions.

(AR, at 1656 (emphasis added.)

Plaintiff objects that the ALJ "cut off questioning precisely when [her] counsel turned to a dispositive, material point" concerning "the VE's assumptions about exertional requirements." (ECF No. 38, at 2–3.) The Magistrate Judge concluded that the ALJ "did not preclude Plaintiff's attorney from further questioning," particularly because Plaintiff's counsel "indicated he had no additional questions." (ECF No. 37, at 13.) Plaintiff's counsel noted during his questioning of the VE, "I think you may have gone through this." (AR, at 1656.) Only at that point did the ALJ respond, "we're not going back on that right now." (AR, at 1656.) As a result, the Magistrate Judge found that "the ALJ operated well within her discretion to monitor the efficient administration of the hearing" and that "the record demonstrates that Plaintiff received a full and fair hearing." (ECF No. 37, at 13, 16.)

The Magistrate Judge correctly concluded that the ALJ provided Plaintiff with a full and fair hearing. Due process rights apply to Social Security proceedings. *Richardson v. Perales,* 402 U.S. 389, 401–02 (1971). "That right includes the opportunity to cross-examine witnesses."

6

*Kelly v. Saul*, No. 4:18-cv-153, 2019 WL 3544071, at \*3 (E.D.N.C. Aug. 1, 2019). Plaintiff contends that the ALJ violated this due process right as codified in various regulations undergirding Social Security proceedings. In those proceedings, the ALJ "may ask the witness any questions *material to the issues* and *will allow the parties or their designated representatives to do so.*" 20 C.F.R. § 404.950(e) (emphasis added). Likewise, "[a] claimant and the[ir] representative have the right to question [a] VE fully on any pertinent matter within the VE's area of expertise." Social Security Administration Hearings, Appeals, and Litigation Law Manual § I-2-6-74(E). And when a Social Security claimant has counsel, the Social Security Administration "expect[s] the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." SSR 24-3p, 2024 WL 5256890, at \*4 (Dec. 6, 2024).

The ALJ violated none of these provisions. Plaintiff insists that the line of questioning to which her counsel attempted to return was material to the ALJ's determinations about whether Plaintiff could perform her past employment or other jobs available in the national economy. (ECF No. 38, at 5–6.) But her counsel asked several questions with respect to that issue *before* the ALJ "affirmatively blocked a return" to those questions. (AR, at 1656.) Plaintiff asserts that "[w]hen counsel attempted to clarify the assumptions underlying the VE's exertional analysis, . . . he was stopped." (ECF No. 38, at 6.) The record demonstrates that Plaintiff's counsel indeed had an opportunity to clarify those assumptions, as required by regulation.

### 2.   Plaintiff Has Failed to Demonstrate that the ALJ's Interruption Prejudiced Her

In her motion for summary judgment, Plaintiff asserted two forms of prejudice resulting from the ALJ's decision: (1) that the ALJ's interruption "may" have been the result of prejudice and (2) that "because the ALJ relied on the VE's testimony in finding [Plaintiff] was not

disabled . . . [t]he ALJ's failure to allow for a full cross-examination . . . was prejudicial in that it created evidentiary gaps." (ECF No. 35, at 11.) The Magistrate Judge addressed the first of Plaintiff's prejudice arguments, but not the second. (ECF No. 37, at 14–16.) Plaintiff renews her second prejudice objection only, which the Court now reviews *de novo*.

Plaintiff asserts that the ALJ's interruption prejudiced her because "the ALJ relied on VE testimony to find [Plaintiff] not disabled . . . so limiting the ability to test that testimony is prejudicial." (ECF No. 38, at 5.) "[T]he resulting evidentiary gap insulated the VE's conclusions from meaningful testing on a dispositive issue." (ECF No. 40, at 4.) "An ALJ's failure to adequately develop the record warrants remand where the failure results in prejudice or unfairness to the claimant." *Seemia Y.S. v. Kijakazi*, No. 3:20-cv-00745 (MRC), 2022 WL 722314, at *4 (E.D. Va. Jan. 27, 2022) (citing *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980)), *report and recommendation adopted*, 2022 WL 710172 (E.D. Va. Mar. 9, 2022). "In other words, remand is improper unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Id.* (quotation omitted). Plaintiff has demonstrated no such prejudice nor pointed to the additional evidence that her attorney might have adduced during additional cross-examination.

Moreover, the Magistrate Judge correctly concluded that the ALJ "interrupted only to prevent the attorney from repeating a prior line of questioning." (ECF No. 37, at 16.) *See Hyett v. Saul*, No. 1:19-cv-216, 2021 WL 1156622, at *8 (N.D.W. Va. Mar. 26, 2021) ("While Hyett had the right to a full and fair hearing on his claim, including the right to cross-examine the vocational expert, the ALJ retained discretion to limit a repetitive and time-consuming examination."). Plaintiff identifies no specific clarifications disallowed, and therefore no

prejudice resulting from that interruption, which only prevented her counsel from continuing questioning with respect to topics already addressed during the hearing.

Because the ALJ properly provided Plaintiff with a full and fair hearing, and because Plaintiff has failed to show that any interruption by the ALJ caused her any prejudice, the Court OVERRULES Plaintiff's first Objection to the R&R.

**B.    The Court Overrules Plaintiff's Second Objection Because the Magistrate Judge Properly Concluded that the ALJ's RFC Determination was Supported by Substantial Evidence**

**1.    The ALJ Did Not Err in Omitting a Cane-Use Limitation from Plaintiff's RFC Determination**

The Magistrate Judge concluded that the ALJ "did not err in omitting a cane-use limitation" from Plaintiff's RFC determination. (ECF No. 37, at 17.)  Plaintiff objects that "[t]he ALJ acknowledged [Plaintiff's] cane testimony [during her hearing] but did not grapple with the documented cane use." (ECF No. 38, at 8.)  The Court OVERRULES this Objection.

The ALJ acknowledged that Plaintiff "claims that she used a walking boot and a cane during the period at issue" but that the record did not contain "a documented medical need for . . . bilateral canes." (AR, at 1583–84.)  As the Magistrate Judge properly noted, the ALJ determined that that Plaintiff was "able to effectively ambulate even when recovering from surgery using a walking boot." (ECF No. 37, at 19 (citing AR, at 1583).)  Moreover, the ALJ noted in the RFC determination that Plaintiff "claims that she used a walking boot and a cane . . . stating that she needed the assistive devices to balance and walk." (AR, at 1584.)  But after reviewing Plaintiff's treatment history, the ALJ concluded that Plaintiff's "treating and examining sources do not support the severity of restrictions that [she] has alleged." (AR, at 1586.)  Indeed, "[a]t every follow-up procedure, [Plaintiff] recovered without incident" and "[t]reating examiners continued to recommend conservative care." (AR, at 1586.)  Relying on

these facts, the ALJ explained that Plaintiff "retains at least some capacity to care for personal hygiene needs, prepare meals, wash laundry, sweep, clean some things, drive, shop for groceries, handle her finances, visit family members, and maintain regular appointments." (AR, at 1586.) Substantial evidence supported the ALJ's RFC determination, including its omission of a cane-use limitation, as the Magistrate Judge concluded.

Additionally, for an ALJ to consider the use of a handheld assistive device in their RFC determination, the record must contain "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Because no such medical documentation was on the record, the Magistrate Judge noted that the ALJ properly considered this legal standard in omitting a cane-use limitation from the RFC. (ECF No. 37, at 17–18 (citing AR, at 1583).)

Accordingly, while Plaintiff asserts that "the ALJ did not do the analysis the law requires," (ECF No. 38, at 8), the record demonstrates that the ALJ's omission of a cane-use limitation in her RFC analysis was supported by substantial evidence and established a "logical bridge" connecting the evidence to her RFC conclusions. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The Court therefore OVERRULES Plaintiff's second Objection to the R&R with respect to the cane-use limitation.

### 2. The ALJ Properly Considered Plaintiff's Side Effects from her Medication

The Magistrate Judge concluded that the ALJ "applied correct legal standards in evaluating Plaintiff's subjective complaints" regarding the side effects of her medication and that substantial evidence "support[ed] the ALJ's conclusion that Plaintiff's subjective allegations were not fully consistent with the record evidence." (ECF No. 37, at 19.) Plaintiff objects that "the ALJ mentioned nausea only once and did not evaluate medication side effects or their

10

functional impact." (ECF No. 38, at 9.)  The Court OVERRULES this Objection.

In evaluating a claimant's subjective complaints, an ALJ must determine if the record establishes a "medically determinable impairment." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016)).  If there is such an impairment, the ALJ "must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.*

As the Magistrate Judge found, the ALJ complied with this process.  (ECF No. 37, at 20.) The ALJ acknowledged the impact of Plaintiff's medication in the RFC determination.  (AR, at 1584 ("The prescribed medications caused side effects including nausea and feeling miserable.").)  But the ALJ also noted that Plaintiff's claims "[were] not supported by the conservative and grossly outpatient treatment history during the period at issue, the clinical and examination findings of no acute complications, and [Plaintiff's] stated ongoing capabilities." (AR, at 1587.)  Contrary to Plaintiff's Objection, the ALJ did not engage in "a failure to discuss the side effects' impact." (ECF No. 38, at 9.)  And the ALJ properly "consider[ed] the subjective nature of [Plaintiff's] symptom complaints" *in addition to* her medical record.  (AR, at 1586.) The ALJ's consideration of Plaintiff's subjective complaints in her RFC analysis was supported by substantial evidence and established a "logical bridge" connecting the evidence to her RFC conclusions.  The Court therefore OVERRULES Plaintiff's second Objection to the R&R with respect to the ALJ's consideration of Plaintiff's side effects from her medication.

### 3.     The ALJ Did Not Err in Characterizing Plaintiff's Pain as "Controlled" Nor in Analyzing Plaintiff's Daily Activities

The Magistrate Judge concluded that the ALJ properly characterized Plaintiff's pain as "controlled" and that the ALJ properly considered both the types of activities Plaintiff could

11

perform and the extent to which she could perform them. (ECF No. 37, at 21–22.) Plaintiff objects that the ALJ failed to explain how "limited, intermittent activities, performed slowly, with assistive devices, and with significant pain, translate into the ability to sustain competitive work on a regular and continuing basis." (ECF No. 38, at 10.) The Court OVERRULES this Objection.

As the Magistrate Judge found, the ALJ did provide this explanation. (ECF No. 37, at 21–22.) The ALJ considered Plaintiff's longitudinal medical history and factored in Plaintiff's testimony about the extent to which she could perform daily activities. (AR, at 1584–85 (acknowledging that Plaintiff "relied on others to drive her," that she would shop "once every 10 days," and that she was "unable to cook for long periods of time," among other factors).) But the ALJ ultimately determined, after reviewing the entirety of the administrative record *including* Plaintiff's subjective complaints, that the "findings of [Plaintiff's] treating and examining sources do not support the severity of restrictions that [Plaintiff] has alleged." (AR, at 1584–86.) *See Arakas*, 83 F.3d at 95–98 (holding that ALJ must consider claimant's subjective complaints even where contrary objective medical evidence is on the record) That is the explanation required of the ALJ.[3] The Court therefore OVERRULES Plaintiff's second Objection to the R&R with respect to the ALJ's consideration of Plaintiff's pain and ability to engage in daily activities.

---

[3] Plaintiff cites *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) and *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017) for the proposition that an ALJ "must consider not only what activities are done but the extent to which they can be performed." (ECF No. 38, at 10.) The Magistrate Judge correctly noted that the ALJ engaged in exactly the consideration required by *Woods* and *Brown*. (ECF No. 37, at 21–22.)

### 4.     The ALJ Did Not Err in Omitting a Social Interaction Limitation from Plaintiff's RFC

The Magistrate Judge concluded that the ALJ did not err in "finding [Plaintiff] mildly limited in interacting with others . . . but not incorporating any RFC limitations or otherwise explaining why her mild limitation did not translate to RFC limitations." (ECF No. 37, at 22.) The ALJ "found Plaintiff no more than mildly limited as a result of mental impairments." (ECF No. 37, at 23.)  Plaintiff objects that her mild limitations in social interaction should have been reflected in the RFC.  (ECF No. 38, at 10–11.)

Plaintiff cites the United States Court of Appeals for the Fourth Circuit's decision in *Mascio v. Colvin* for the proposition that "[w]here the [ALJ's] denial [of benefits] is based on past work as a manager/server, the ALJ must explain why even a 'mild' interaction limitation does not erode the occupational base for those jobs." (ECF No. 38, at 11 (citing 780 F.3d 632, 638 (4th Cir. 2015).)  However, "[i]n finding Plaintiff's mental impairments non-severe, her limitations by their nature have no more than a minimal effect on her working ability." (ECF No. 37, at 23 (quotations omitted).)  "ALJs are not required to explain or incorporate functional limitations with de minimis effect in RFCs.  The Fourth Circuit has indicated that moderate—not mild—limitations must be either accounted for in the RFC or alternatively explained.  This district has routinely declined to extend this requirement to mild limitations." *Kimberly G. v. Comm'r of Soc. Sec. Admin.*, No. 2:21-cv-45 (DEM), 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021) (citing *Mascio*, 780 F.3d at 638, and collecting cases), *report and recommendation adopted*, 2022 WL 882165 (E.D. Va. Mar. 23, 2022).  Indeed, "[t]he Fourth Circuit has held that the ALJ is 'only required to *consider* these non-severe impairments,' and so long as the impairments are discussed under step two, a court's review of the ALJ's decision is 'not frustrated' when it omits further discussion under the RFC step." *Rita H. v. Bisignano*, No. 3:24-

13

cv-72 (HEH), 2025 WL 2060787, at *4 (E.D. Va. July 23, 2025) (quoting *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (emphasis in original)).

Here, the ALJ did consider Plaintiff's non-severe impairments, even where they were not included in the ALJ's RFC determination. Substantial evidence supported the ALJ's severity determination: the ALJ determined that Plaintiff "can communicate with treating medical providers with no issues, . . . visit with family members, and maintain appointments," even where she "endorsed some restrictions getting along with others." (AR, at 1581.)

The Court therefore OVERRULES Plaintiff's second Objection to the R&R with respect to the ALJ's consideration of Plaintiff's social interaction limitations.

### C. The Court Overrules Plaintiff's Third Objection Because the Magistrate Judge Properly Concluded that the Plaintiff Failed to Establish the ALJ's Bias

As discussed above, Plaintiff objects that the Magistrate Judge incorrectly concluded that the ALJ provided her with a full and fair hearing. In her motion for summary judgment, Plaintiff asserted that her hearing could not have been full and fair because the ALJ "may have been prejudiced or impartial." (ECF No. 35, at 11.) The Magistrate Judge correctly concluded that "Plaintiff's bald assertion that there 'may' be evidence of prejudice is insufficient to establish a due process violation." (ECF No. 37, at 15.) No evidence on the record indicates that the ALJ held prejudice or bias against Plaintiff. Plaintiff now "acknowledges the high standard for proving actual bias," but if the Court "remands based on procedural unfairness . . . remand to a different ALJ is an appropriate remedial safeguard." (ECF No. 38, at 12.) Because the Court overrules Plaintiffs previous Objections, the Court sees no basis to remand. The Court therefore OVERRULES Plaintiff's third Objection to the R&R.

14

### IV.  CONCLUSION

Having reviewed the record *de novo*, the Court finds that the Commissioner's final decision was supported by substantial evidence and that the Commissioner employed the correct legal standards in reaching that decision.  The Court ORDERS that:

(1) Plaintiff's Objections to the R&R, (ECF No. 38), are OVERRULED;

(2) The R&R, (ECF No. 37), is ADOPTED on the basis of the reasoning in the R&R;

(3) Plaintiff's Motion for Summary Judgment, (ECF No. 35), is DENIED;

(4) The Commissioner's Motion for Summary Judgment, (ECF No. 36), is GRANTED; and,

(5) The Commissioner's decision is AFFIRMED.

It is SO ORDERED.

Date: 3/25/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge